**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Ignazio L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 25 cv 50503 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Ignazio L., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On January 23, 2023, Ignazio L. ("Plaintiff") filed a Title II application for disability and disability insurance benefits, alleging a disability beginning on April 14, 2022. R.17. The Social Security Administration denied his application initially on January 8, 2024, and upon reconsideration on July 22, 2024. *Id*. Plaintiff filed a written request for a hearing and on January 13, 2025, a telephonic hearing was held by Administrative Law Judge ("ALJ") James MacDonald where Plaintiff appeared and testified. *Id*. Plaintiff was represented by Brad Alan Reynolds, an attorney, who appeared at the hearing. *Id.* Lee Knutson, an impartial vocational expert ("VE"), also appeared at the hearing. *Id*.

On January 29, 2025, the ALJ issued his decision denying Plaintiff's claim. R. 17-29. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-8. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [10]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [14], the Commissioner's response brief [17], and Plaintiff's reply [18].

### B. The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2022, the alleged onset date. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: aortic aneurysm, obesity, depression, anxiety, panic disorder, obsessive-compulsive disorder, posttraumatic stress disorder, and bipolar disorder. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. R. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20-22.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except frequently climbing ladders, ropes, or scaffolds; frequently climbing ramps and stairs; frequently balancing, stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to temperature extremes; avoiding concentrated exposure to humidity; avoiding concentrated exposure to hazards such as uneven footings, unprotected heights, and operating heavy machinery; retaining the mental capacity for understanding, remembering, concentrating, and persisting sufficiently to carry out more than simple, routine tasks but less than complex tasks for a normal work period but not for extended periods; interacting with others sufficiently in a work setting with reduced social demands, as with a predictable, routine work setting where employment-related social interactions are infrequent, defined as occasional, with brief and minimal contact with the general public; and adapting adequately to simple, routine changes and pressures. R. 22-27. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 27. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 28-29. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since April 14, 2022. R. 29.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for

every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified) (citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues that the ALJ erred in: (1) evaluating Plaintiff's subjective symptoms and (2) evaluating the opinion evidence. The Court finds that the ALJ adequately supported his evaluation of Plaintiff's symptoms and the medical opinions with substantial evidence, and that his subjective symptoms analysis was not patently wrong. Accordingly, the Court affirms the Commissioner's decision.

### Subjective Symptoms

Plaintiff contends that the ALJ erred in evaluating Plaintiff's subjective symptoms because the ALJ cherry-picked evidence by overreliance on objective findings, and because the ALJ failed to consider Plaintiff's subjective symptoms in accordance with Social Security Ruling (SSR) 16-3p. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (citation omitted); *see also Senora W. v. O'Malley*, No. 21 CV 4411, 2024 WL 4346613, at *4 (N.D. Ill. Sept. 30, 2024) (quoting *Wilder v. Kijakazi*, 22 F.4th 644, 65) (The Court will uphold an ALJ's symptom analysis unless that determination is "patently wrong."). An ALJ's assessment is patently wrong if the decision lacks explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). "Not all of the ALJ's reasons must be valid [in a subjective symptom analysis] as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009).

Plaintiff argues that the ALJ "cherry-picked evidence" by ignoring evidence unfavorable to Plaintiff's application, including Plaintiff's history of hospitalizations. Plaintiff also argues that by failing to properly examine certain evidence as required by SSR 16-3p, the ALJ failed to draw a logical bridge between evidence and his conclusion. As to Plaintiff's noncompliance with a prescription regimen, Plaintiff asserts that the ALJ failed to attribute Plaintiff's noncompliance to his mental health conditions, including bipolar disorder. Plaintiff argues that an ALJ assessing a claimant with bipolar disorder must consider possible alternative explanations before concluding that noncompliance with medication supports an adverse credibility inference. *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). Finally, Plaintiff claims that the ALJ downplayed the severity of Plaintiff's hospitalizations associated with a suicide attempt and effort to smother his wife with a pillow. As a result, Plaintiff argues that the ALJ failed to appropriately evaluate the record in light SSR 16-3p, which requires a two-step process for evaluating an individual's symptoms.

As an initial matter, the Court notes that the ALJ provided a holistic review of the record and was not required to discuss "every piece or category of evidence." *Warnell*, 97 F.4th at 1053 (citations omitted). Moreover, the ALJ considered evidence that supported Plaintiff's position, and evidence that supported the ALJ's ultimate conclusion.

The ALJ's assessment of Plaintiff's subjective symptoms, in accordance with SSR 16-3p, was comprehensive and included consideration of a combination of objective medical evidence, opinion evidence, daily activities, medication, and course of treatment in assessing Plaintiff's alleged symptoms. The ALJ noted that Plaintiff was diagnosed with depression, anxiety, panic disorder, obsessive-compulsive disorder, post-traumatic stress disorder, and bipolar disorder. R.21. The ALJ also noted that Plaintiff alleged these diagnoses caused symptoms such as depressed mood, social withdrawal, and mood swings. *Id*. Furthermore, the ALJ acknowledged that some records show irritability and impulsivity, while others detail agitated behavior with pressured speech and paranoia. *Id*. However, the ALJ also noted that these symptoms were associated with involuntary hospital admission while non-compliant with medication. *Id*. Further, the ALJ noted that while Plaintiff often presented with an anxious or depressed mood, he remained generally cooperative with medical providers and exhibited appropriate behavior without notable indicia of significant functional defects. *Id*. In addition, the ALJ noted that Plaintiff's treating medical providers routinely noted normal or only slightly diminished memory, thought processes, focus, and cognitive function throughout the period of alleged disability. *Id*. Regarding Plaintiff's suicide attempt, the ALJ noted that his condition had stabilized upon discharge. R.25. The ALJ also examined Plaintiff's daily living activities, noting that he continued to complete personal care tasks, attend medical appointments, care for his dog, complete household chores, leave home unaccompanied, and adjust to his aversion of crowds and lines. R. 22.

Plaintiff suggests that the ALJ erred by drawing a negative inference based on Plaintiff's noncompliance with treatment. However, the Court recognizes that the ALJ constructed an RFC that addressed Plaintiff's bipolar-related limitations, to the extent they were supported by the record, and considered a combination of objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. Thus, the ALJ considered noncompliance alongside a variety of factors, and the ALJ's brief references to medication noncompliance provided context to his analysis and were not a primary touchpoint for the ALJ's determination regarding Plaintiff's subjective complaints. *See McBride v. Berryhill*, No. 16 CV 9487, 2018 WL 3344406, at *7 (N.D.

Ill. July 9, 2018) ("Where, as here, the ALJ's credibility assessment is supported by the record as a whole, any error in exploring potential reasons for a lack of medical compliance is harmless, and the Court cannot say that the assessment was patently wrong").[1]

Accordingly, the Court finds that the ALJ sufficiently followed the guidelines in SSR 16-3p when evaluating Plaintiff's subjective symptoms by adhering to the two-step process and considering various types of evidence as required. The ALJ appropriately examined Plaintiff's stated symptoms and their consistency with the record, drawing a logical bridge between the evidence and his conclusion. The ALJ credited Plaintiff's symptoms to the extent they were supported by the record, which resulted in an RFC that included appropriate limitations. R. 22-23. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. To the extent Plaintiff maintains that the record supported different findings, the Court notes that it does not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citation omitted). Accordingly, the Court finds the ALJ's subjective evaluation fully explained, supported, and not patently wrong.

**Medical Opinions**

Plaintiff contends that the ALJ erred in evaluating the opinion evidence. Specifically, Plaintiff appears to contend that the ALJ erred by giving persuasive weight to the opinions of state agency psychologists Russell Taylor, Ph.D., and Howard Tin, Psy.D., while finding the opinion of advanced practice nurse (APN) Hasting unpersuasive. Plaintiff also contends that the ALJ failed to address the conflict between the medical opinions and the ALJ's RFC assessment, which requires an explanation under SSR 96-8p. The Court finds that the ALJ reasonably evaluated the medical opinions in accordance with SSR 96-8p.

When assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Instead, the ALJ must consider factors such as supportability, consistency, relationship with the claimant, and length of the treatment relationship. 20 C.F.R. § 404.1520c(a), (c). Among these, supportability and consistency are the most important factors, and the ALJ is required to explain how they considered these two factors in their determination or decision. *Patrice W. v. Kijakazi*, No. 20CV02847, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. §404.1520c(b)(2)). In assessing the supportability factor, a medical opinion is considered more persuasive "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c. In assessing the consistency factor, an ALJ should consider the consistency of the medical opinion with "the evidence from other medical sources and

[1] Plaintiff's reference to *Zemender* suggests that the ALJ's analysis regarding medication noncompliance was incomplete. [14, p. 8 (citing *Zemender W. v. Bisignano*, No. 24 CV 5716, 2026 WL 765768, at *4 (N.D. Ill. Mar. 18, 2026)]. The Court notes that in *Zemender,* the court found deeper analysis of noncompliance required given the ALJ's principal reliance on this factor in his decision. By contrast, this case involves lines of evidence, including medical records, on which the ALJ in *Zemender* was silent. *Zemender W.* , No. 24 CV 5716, 2026 WL 765768, at *4.

nonmedical sources in the claim." *Id*. "[O]nce the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell*, 72 F.4th at 816 (internal quotation marks and citation omitted).

As to the state agency medical opinions, Dr. Taylor found plaintiff capable of more than simple and routine tasks but less than complex tasks for a normal work period, able to make simple work-related decisions, able to interact with others in a work setting with reduced social demands, able to work in a predictable setting with infrequent, brief, and minimal social interactions with the general public, and able to adapt to routine changes and pressures. On reconsideration, Dr. Tin agreed with this initial determination. Both doctors also found that Plaintiff had a moderate limitation in completing a normal workday and workweek without interruptions and performing at a consistent pace without an unreasonable number and length of rest periods.

The ALJ articulated that these state agency assessments were "well-supported by treatment records available at the time of the determination" and "generally consistent with subsequent records reflecting similar observations." R. 26. The ALJ thus concluded that "these prior administrative medical findings are persuasive except with respect to the assessment of moderate limitations in completing a normal work schedule without interruptions and working at a consistent pace without an unreasonable number and length of rest periods." *Id.* The Court finds that the ALJ adequately examined the supportability and consistency of the state agency medical opinions and minimally articulated his reasons for finding the opinions persuasive.

APN Hasting opined that Plaintiff suffered from extreme limitations in all aspects of all areas of mental functioning. R.26. She further opined that Plaintiff had satisfactory capabilities in three of sixteen mental abilities and aptitudes needed for unskilled work, with serious or greater limitations in all others. *Id*. APN Hasting also concluded that Plaintiff had no useful ability to function in terms of semiskilled and skilled work, had difficulty traveling to unfamiliar places, and maintaining socially appropriate behavior. *Id.* APN Hasting further noted that Plaintiff would be absent more than 4 days a month. *Id.*

The ALJ explained that APN Hasting's assessment was "somewhat supported" by treatment records during periods of hospital admission for suicidal ideation. R. 26. However, the ALJ addressed the appropriate factors and determined that the opinion overall was "not well-supported by other treatment records as of the time this opinion was issued or subsequent treatment records reflecting repeated clinical observation of normal orientation, cognitive function, . . . not[ing] only an anxious or depressed mood without other indicia of significant functional deficits". R. 27. The ALJ further addressed that the "opinion is inconsistent with clinical observations by the consultative examiners of normal mental functioning beyond an anxious mood." *Id.* Accordingly, the ALJ found that Hasting's opinion was not persuasive. Given this analysis, the Court finds that the ALJ adequately examined the supportability and consistency of APN Hasting's opinion and minimally articulated his reasons for finding the opinion not persuasive.

Plaintiff further contends that the ALJ failed to explain the discrepancy between his RFC assessment and conflicting opinions from a medical source, as required under SSR 96-8p. SSR 96-8p states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the

adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996). Plaintiff specifically suggests that by failing to address the discrepancy between the opinion of APN Hasting and his RFC assessment, the ALJ failed to properly analyze the medical record as required by SSR 96-8p.[2]

The ALJ adequately articulated his assessments of the medical opinions. *Warnell*, 97 F.4th at 1053 ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements."). As stated above, the ALJ addressed APN Hasting's opinion, stating that it noted "extreme limitations in all aspects of all areas of mental functioning" R. 26. The ALJ also noted that the opinion was somewhat supported by certain treatment records. R.26-27.[3] However, the ALJ noted why he considered other findings, such as those of Dr. Taylor, and Dr. Tin, on reconsideration, more persuasive than those of APN Hasting. While Drs. Taylor and Tin conducted separate evaluations, both concluded that Plaintiff demonstrated normal orientation, cognitive function, and presentation, ability to understand, remember, and concentrate, as well as an ability to persist sufficiently to carry out more than simple, routine tasks but less than complex tasks for a normal work period. R.26. Further, the ALJ noted that APN Hasting's opinion was inconsistent with other clinical observations on record conducted by consultative examiners, including that of Dr. House, which indicated normal functioning beyond an anxious mood. R.27.

The Court further finds that the ALJ adequately addressed evidence that may have conflicted with his RFC assessment as required under SSR 96-8p, and as a result, drew a logical bridge between the evidence and his conclusion. In analyzing the opinion evidence, the ALJ considered findings by APN Hasting, but found the opinion unpersuasive because they were not fully supported by other medical evidence in the record. The ALJ also considered the medical opinions of Drs. Taylor and Tin and found that light work more accurately captured Plaintiff's limitations. R.22. Further, the ALJ satisfied the minimal articulation requirements for evaluating medical opinions. As noted above, "[t]he most important factors [the ALJ must] consider when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency." 20 C.F.R. § 404.1520c(a). Here, the ALJ clearly set out why he found the state agency consultants' opinions supported and consistent and APN Hasting's opinion not to be.

The Court finds that the ALJ adequately evaluated Plaintiff's symptoms, the medical opinions, and supported his conclusions with substantial evidence.

---

[2] Plaintiff's Brief makes minimal reference to Dr. House and his consultative examination, but this argument is undeveloped and will not be considered. "[S]everely underdeveloped…arguments are waived." *Goss o.b.o. Goss v. Saul*, No. 1:19-cv-374-PPS, 2020 WL 4559171, at *4 n. 3 (N.D. Ind. 2020) (citing *Pike v. Colvin*, No. 09 C 4351, 2015 WL 6756264, at * 3 (N.D. Ill. Nov. 5, 2015) (stating perfunctory and underdeveloped arguments in social security appeals are waived)).

[3] Plaintiff also references the ALJ's handling of medication noncompliance in his review of the medical opinions. As with the subjective symptoms analysis, the ALJ considered medication noncompliance alongside a variety of factors and medication noncompliance was not the primary basis for the ALJ's analysis as to the medical opinions.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to reverse and remand the Commissioner's decision [14] is denied and the Commissioner's motion for summary judgment [17] is granted.

Date: 09/29/26

ENTER:

Margaret J. Schneider

United States Magistrate Judge